**P.C.M.E. COMMERCIAL, S.E., Plaintiff,**

v.

**PACE MEMBERSHIP WAREHOUSE, INC. and K–Mart Corporation, Defendants.**

Civil No. 94–1250(DRD).

United States District Court, District of Puerto Rico.

Jan. 27, 1997.

Roberto Boneta, Munoz, Boneta, Gonzalez, Arbona, Benitez & Peral, Hato Rey, PR, Roberto Lefranc–Romero, Santurce, PR, Michael J. Rovell, Holstein, Mack & Klein, Chicago, IL, for P.C.M.E. Commercial, S.E.

Steven C. Lausell–Stewart, Jimenez, Graffam & Lausell, San Juan, PR, for Pace Membership Warehouse, Inc.

Steven C. Lausell–Stewart, Jimenez, Graffam & Lausell, San Juan, PR, Daniel M. Brinks, Dickinson, Wright, Moon, Van Dusen & Freeman, Chicago, IL, Jon Robert Steiger, Howard & Howard, Bloomfield Hills, MI, for K–Mart Corporation.

## OPINION AND ORDER

DOMINGUEZ, District Judge.

Pending before the Court are three motions for partial summary judgment by Defendants. One is for partial summary judgment on a breach of contract claim for Defendants' failure to open and operate a PACE Membership Warehouse Store in the shopping center Plaza del Caribe Mall II. (Docket No. 11) Another is for partial summary judgment seeking dismissal of the claim for fraud and deceit ("dolo") in the formation of the contract. (Docket No. 68). And the last one is for partial summary judgment on count IV for collection of debt under the contract ("Lease Agreement"). (Docket No. 73).

## I. BACKGROUND

Plaintiff, P.C.M.E. Commercial, S.E., is a special partnership engaged in the commercial real estate business and is the owner of the shopping center project known as Plaza del Caribe Mall II. Defendant PACE Membership Warehouse, Inc. (PACE) is a Colorado corporation with its principal place of business in Englewood, Colorado. Defendant Kmart Corporation, is a Michigan corporation with its principal place of business in Troy, Michigan. Prior to November 1993, PACE owned and operated PACE Membership Warehouse stores in the United States and Puerto Rico. At all relevant times, Kmart owned all of the outstanding capital stock in PACE.

This case concerns a Lease Agreement between Plaintiff P.C.M.E. and Defendant PACE, and the underlying Guarantee Agreement executed by Defendant Kmart. Under the Lease Agreement, Plaintiff was to construct a building in the shopping Center Plaza del Caribe Mall II, according to defendant PACE's specifications, and then lease it to defendant PACE. While construction was under way, PACE ordered construction to be halted. Plaintiff tendered, and PACE accepted, the building as it was on the date stipulated in the Lease Agreement. Defendants have been paying rent on the building but they have not opened a store in the premises.

Plaintiff filed this suit to recover damages suffered because of Defendants' failure to open a PACE Membership Warehouse Store in the demised premises. Plaintiff alleges that defendant PACE was the anchor tenant in the shopping center and that the contract imposed an obligation to open and operate a PACE Membership Warehouse Store in the demised premises. Plaintiff also claims that Defendants owe him $210,790.89 for alleged increased costs due to certain change orders in the construction of the building under the Lease Agreement. Finally Plaintiff alleges that defendant Kmart, knowing that the PACE Warehouse Store was not going to be opened, fraudulently induced them into entering the contract by concealing their knowledge that the store was not going to be opened.

Defendants argue by way of three partial motions for summary judgment: 1) that the "clear terms" of the contract do not impose an obligation to open a PACE Membership Warehouse Store in the demised premises; 2) that under the Lease Agreement Plaintiff's savings in construction costs due to Defendant's request to halt construction exceed and offset the $210,790.89 claimed by Plaintiff; and 3) that Plaintiff has not set forth any evidence to support the claim of fraud ("dolo")

## II. STANDARD FOR SUMMARY JUDGMENT

The framework of Fed.R.Civ.P. 56(c), provides that it is appropriate to enter summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." The First Circuit has determined that summary judgment is appropriate even when "[there is a] mere existence of some alleged factual dispute between the parties [which would not] defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Mulero–Rodríguez v. Ponte, Inc.*, 98 F.3d 670, 673 (1st Cir.1996) (citing *Medina–Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990)). Furthermore,

> [once] the summary judgment is made and supported as provided by this rule, an adverse party may not rest upon mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. [Furthermore,] [i]f the adverse party does not respond, summary judgment, if appropriate shall be entered against the adverse party.

Fed.R.Civ.P. 56(e). "An issue is genuine if it 'must be decided at trial because the evidence, viewed in the light most flattering to the non movant, would permit a rational fact finder to resolve the issue in favor of either party'." *Mulero–Rodríguez*, 98 F.3d at 673 (citing *Medina–Muñoz*, 896 F.2d at 8 (1st Cir.1990)). *See also Wyner v. North American Specialty Insurance Co.*, 78 F.3d 752, 754 (1st Cir.1996).

■ The party filing a motion for summary judgment bears the initial burden of proof to show "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). Thereafter, the burden shifts to the non-movant to provide the Court, through the filing of supporting affidavits or otherwise, with "some indication that he can produce the quantum of evidence to enable him to reach the jury with his claim." *Hahn v. Sargent*, 523 F.2d 461, 468 (1st Cir.1975). The non-movant cannot rest upon mere allegations or denial of the pleadings. Fed. R.Civ.P. 56(e). Indeed, the non-movant must affirmatively show that "sufficient evidence supporting the claimed factual dispute [exists] to require a jury or judge to resolve the parties' differing versions of truth at trial." *First National Bank v. Cities Service Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968). When the issue involved in the motion for summary judgment is the contracting parties' intent, summary judgment is generally precluded except in cases where the supporting evidence is so sufficiently one sided that no reasonable person could differ. *See Blanchard v. Peerless Insurance Co.*, 958 F.2d. 483, 488 (1st Cir1992) (holding that the contracting parties' intent generally is deemed a material issue of fact precluding summary judgment).

■ Pursuant to local Rule 311.12 a summary judgment movant must serve and annex to the motion a separate, short, and concise statement of material facts as to which the movant contends there are no genuine issues to be tried. All material facts set forth in the statement will be deemed admitted unless controverted by the opposing party. *See Ayala–Gerena v. Bristol Myers–Squibb Company*, 95 F.3d 86, 95 (1st Cir. 1996); *Rivas v. Federacion de Asociaciones Pecuarias de Puerto Rico*, 929 F.2d 814, 816 n. 2 (1st Cir.1991); *Laracuente v. Chase Manhattan Bank*, 891 F.2d 17, 19 (1st Cir.

1989); *Stepanischen v. Merchants Despatch*, 722 F.2d. 922, 930 (1st Cir.1983).

## III. UNCONTESTED FACTS PERTINENT TO THE THREE MOTIONS.

The Court sets forth the facts not in controversy in the light most favorable to the nonmoving Party. *Velez–Gomez v. SMA Life Assurance Company*, 8 F.3d 873, 874–875 (1st Cir.1993); *LeBlanc v. Great American Insurance Company*, 6 F.3d 836, 841 (1st Cir.1993). A careful examination of the record reveals the following uncontested facts pertinent to the three motions for partial summary judgment:

1) During 1992, Plaintiff, P.C.M.E., was in negotiations with defendant PACE as possible tenant for Plaza del Caribe Mall II.

2) On February 25, 1993 P.C.M.E. and PACE executed a written Lease Agreement, which was conditioned on Kmart executing a guarantee of PACE's obligations under the Lease Agreement. The contents of the Lease Agreement and the Guarantee document are not disputed.

3) Under the Lease Agreement, Plaintiff was to construct a building in the shopping center Plaza del Caribe Mall II, according to defendant PACE specifications; and then lease it to defendant PACE.

4) On March 15, 1993, Kmart executed the Guarantee required under the Lease agreement between P.C.M.E. and PACE.

5) On or about March, 1993, Kmart and Wal-Mart executives were discussing the sale of 14 of PACE's stores to WalMart. This sale was submitted to Kmart's Board of directors on May 25, 1993. Subsequently, the sale was consummated.

6) On or about September, 1993, Kmart and WalMart executives were. negotiating the sale of other PACE's stores to WalMart. On November 2, 1993 PACE and WalMart executed an Asset Purchase Agreement for the sale of substantially all of PACE's assets to WalMart and PACE has presently discontinued its operations.

7) By letter dated December 1, 1993, while the Plaza del Caribe building was under construction, defendant PACE notified P.C.M.E. that it would not open for business in the property covered by the Lease Agreement, and indicated that they "would like to have construction efforts tapered in order to provide for a greater variety of uses." This letter also confirmed PACE request to complete the roof, button up the entryway, and not install the skylights.

8) Plaintiff abided PACE's request to halt construction and delivered the premises to PACE on February 28, 1994, the date stipulated in the Lease Agreement.

9) The changes requested by PACE directing that construction efforts be tapered, resulted in savings to P.C.M.E. in construction costs of the building in the amount of $800,000.00 dollars.

10) On September 19, 1994, PACE assigned Kmart the Lease in the Plaza del Caribe Mall II.

11) While Defendants have not opened a store on the demised premises, they have been paying rent on the lease and seeking a suitable tenant to sublease the building.

## IV. INTERPRETATION OF THE CONTRACT

■ The substantive law of Puerto Rico governs the instant diversity action based on puertorican contract law. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). The interpretation of a contract is a substantive area of the law which is governed by articles 1233 and 1234 of the Civil Code of Puerto Rico. *See Borschow Hosp. & Medical v. Castillo*, 96 F.3d 10, 15 (1st Cir.1996); *Hopgood v. Merrill Lynch, Pierce, Fenner & Smith*, 839 F.Supp. 98, 104 (D.P.R.1993); *Marina Industrial., Inc. v. Brown Boveri Corp.*, 114 P.R. Dec. 64, 72 (1983). Articles 1233 and 1234 provide:

"If the terms of a contract are clear and leave no doubt as to the intentions of the contracting parties, the literal sense of its stipulations shall be observed.

If the words should appear contrary to the evident intention of the contracting parties, the intention shall prevail."

P.R. Laws Ann. tit. 31, sec. 3471 (Official translation 1991).

"In order to judge as to the intention of the contracting parties, attention must principally be paid to their acts, contemporaneous and subsequent to the contract."

P.R. Laws Ann. tit. 31, sec. 3472.

 The First Circuit, citing *Marina Industrial.*, has consistently stated that article 1233 is strict in its mandate that courts should enforce the literal sense of a written contract, unless the words are somehow contrary to the intent of the parties. *Borschow Hosp. & Medical v. Castillo*, 96 F.3d. at 15 (1st Cir.1996); *Hopgood v. Merrill Lynch, Pierce, Fenner & Smith*, 839 F.Supp. at 104 (D.P.R.1993) (citing *Marina Ind. Inc. v. Brown Boveri Corp.*, 114 P.R. Dec. at 72 (1983)). This Circuit, interpreting article 1233 in tandem with Puerto Rico's parol evidence rule[1] has required courts "to ignore [parol] evidence 'when the agreement ... is *clear and unambiguous.*'" *Borschow Hosp. & Medical v. Castillo*, 96 F.3d. at 15 (citing *Mercado–Garcia v. Ponce Fed. Bank*, 979 F.2d 890, 894 (1st Cir.1992)). However, this requirement only applies when the agreement is "clear and unambiguous". When the document leaves doubts as to the intentions of the parties, the court must look beyond the literal terms. *See Catullo v. Metzner*, 834 F.2d 1075, 1079–80 (1st Cir.1987) (holding that the Puerto Rico Rules of evidence exclude extrinsic evidence concerning the terms of an agreement only when the agreement is clear and unambiguous). "The only terms which can be considered to be "clear" are those which in themselves are sufficiently lucid to be understood in one sense alone, without leaving any room for doubt, controversies or difference of interpretation, and without requiring for their understanding any reasoning or illustration susceptible to challenge." *Id.* (citing *Sucn. Ramirez v. Tri-*

*bunal Superior*, 81 P.R. Dec. 357, 351 (1959)).

### A. Obligation to Open a PACE Warehouse Store.

Plaintiff alleges that all throughout negotiations both defendants understood and agreed to the PACE Warehouse Store's role as anchor tenant in the shopping center Plaza del Caribe Mall II, that according to industry-wide norms anchor tenants are vital to the development and financing of a shopping center, and that the contract imposed an obligation to open and operate a PACE Warehouse Store. Defendants contend that the Lease Agreement does not include a "store opening clause" that specifically obligates them to open a PACE Membership Warehouse Store by a particular date. Defendants further argue that the "clear" terms of the lease do not impose an obligation to open a store in the demised premises and that if the parties would have intended such a requirement they would have included a date by which the store must have been opened. Defendants also propose that several provisions of the lease agreement support their interpretation that there is no obligation to open a store on the demised premises. Specifically, defendants contend that article 41 of the Lease Agreement grants PACE an unlimited right to cease business operations in the demised premises subject only to a notification requirement, and that articles 10 and 20, setting up the "date of occupancy" and the conditions of "use" respectively, contemplate the possibility that the lease may take effect even if PACE did not open the store. Based on these provisions, defendants contend that PACE was under no obligation to open a store in the premises.

---

1. Puerto Rico's parol evidence rule provides:
 "When in an oral or written agreement, either public or private, all the terms and conditions constituting the true and final intention of the parties have been included, such agreement shall be deemed as complete, and therefore, there can be between the parties, or successors in interest, no evidence extrinsic to the contents of the same, except in the following cases:
 (1) Where a mistake or imperfection of the agreement is put in issue by the pleadings;

 (2) Where the validity of the agreement is the fact in dispute. This rule does not exclude other evidence of the circumstances under which the agreement was made or to which it is related such as the situation of the subject matter of the instrument or that of the parties, or to establish illegality or fraud."
 P.R. Laws Ann. tit. 32, App. IV, R. 69(B) (1983) ("Rule 69(B)").

Plaintiff counters that article 41 required PACE to open for business in the demised premises before it could cease operations. Plaintiff further contends that articles 10 and 20 contemplated that a PACE Membership Warehouse Store was going to be opened and operated in the demised premises. Plaintiff also points to various other provisions of the lease to support their interpretation that defendants had an obligation to open a store in the demised premises. Specifically, Plaintiff points to articles 1 and 6 and the exhibits attached thereto and incorporated as part of the contract which described the demised premises and included the specifications provided by defendant for the construction of the PACE Warehouse Store, and the description of the PACE signs to be fixed in the shopping center.

■ After reviewing the contract, the Court finds that the terms of the Lease Agreement are not "sufficiently lucid to be understood in one sense alone, without leaving any room for doubt, controversies or difference of interpretation". *Catullo v. Metzner*, 834 F.2d at 1079. There is no controlling clause specifically mandating the opening of a PACE Membership Warehouse Store or precluding the obligation to open said store. The various provisions relied on by both parties [2] could reasonably be construed to require that the store be opened in

2. The provisions relied on by both parties to support their conflictive propositions are articles 10, 20, and 41 of the Lease agreement. These articles provide as follows:

Article 10:
"The term "date of occupancy by Tenant", as used in this lease, shall be the first to occur of the following two dates: (a) the date upon which Tenant shall open its store for business, or (b) the date which shall be ninety (90) days (plus a period of time equal to any delays due to conditions beyond Tenant's control) after the date upon which (I) the demised premises (included but not limited to Tenant's building) and those Common Area improvements, on site and off-site improvements necessary for Tenant's operation in the demised premises, shall be completed in accordance with said working drawings and specifications and the possession thereof shall be tendered to Tenant, and (ii) the representations and warranties set forth in articles 9, 11 and 15 hereof, shall have been fulfilled; provided, however, notwithstanding anything to the contrary in this lease contained, in the event said date of occupancy shall occur during the period between November 15 and the last day of February, the lease term shall not commence until the immediately succeeding March 1, unless Tenant shall elect to open for business prior to such date. Tenant shall have the option to open for business prior to the completion of the matters set forth in subdivisions (I) and (ii) of this Article 10, and, in the event of the exerciser of such option, Landlord shall complete said building and improvements according to the said working drawings and specifications within ninety (90) days after Tenant opens for business, Tenant shall thereafter at any time be privileged, but not obligated, to complete, correct or remedy, in all or in part, any such deficiency, and the cost thereof shall be deducted from the rental due under this lease, without waiver of the Tenant's other remedies hereunder."

Article 20:
Tenant shall only use the demised premises for the operation of a so called "PACE Membership Warehouse" or for other retail purposes, and/or for providing professional services and/or banking or similar financial services, but always subject to all conditions specified below in this Article 20.

Tenant shall have the right to assign this lease or sublet the demised premises, but if it does so, Tenant shall remain fully liable and responsible during the term of the lease and its guarantor shall remain responsible pursuant to the terms of it Lease Guarantee Agreement of even date herewith.

If Tenant shall assign this lease or sublets all or any part of the demised premises, Tenant may do so without Landlord's consent, and each resulting assignee or sublessee as the case may be, shall only be authorized to occupy and use the premises, and operate therein, under the terms and conditions in this Article 20.

Tenant, any assignee or sublessee, shall operate the demised premises as a whole integrated single retail operation (which integrated retail operation may include but not be substantially composed of licensees and concessionaires) or as a subdivided operation, such subdivided operation to be comprised of the following:

a. An integrated retail operation of no less than 40,000 square feet within the demised premises (said integrated retail operation may include but not be substantially composed of licensees and concessionaires), and

b. The remainder of the demised premises, for retail and/or financial or professional service operations of not less than 10,000 square feet each; each such additional operation to be operated singly and integratedly within its corresponding subdivided space within the demised premises ...

The terms and conditions of this lease shall be paramount and prevail over the terms and conditions of any assignment, sublease or other similar agreements between Tenant and any assignee or sublessee.

The use, assignment, subletting. Encumbrance and all other restrictions specified in this

the premises, or they could be construed as a regulation for the parties conduct once the store is opened but not requiring that it be opened. In order for the court to properly construe the terms of the contract the court would have to make a determination of the parties intent. Further, defendants' own argument that if the parties had intended to create an obligation to open a store they would have included a clause setting forth the date of opening, belies the whole purpose of their filing this motion for partial summary judgment, for it is an invitation to the court to make a judgment of the parties intent. At this stage, the contracting parties intent is deemed a material issue of fact that precludes summary judgment. *Blanchard v. Peerless Insurance Co.*, 958 F.2d. at 488.

**WHEREFORE** Defendants' motion for partial summary judgment on PACE's obligation to open a store in the demised premises is hereby **denied.**

B. Collection of Debt for Increased Construction Costs.

On Count IV of the Complaint Plaintiff seeks to recover $210,790.89 for alleged increased costs due to certain change orders in the construction of the project under the Lease Agreement. Defendants filed motion for partial summary judgment, including the statement of material uncontested facts, required by local rule 311.12, on January 4, 1996. Plaintiff never opposed the motion nor controverted any of the material facts set forth in Defendants' statement. Pursuant to Local rule 311.12 the Court deems admitted the material facts set forth in the statement. First, the contents of the Lease Agreement are not contested. Clause 6 of the Lease Agreement provides in pertinent part:

"Subsequent to the approval of the typical drawings and specifications, in the event that criteria changes to the lease shall be requested by Tenant, which result in a savings to the Landlord in construction costs, then, Tenant shall have a credit in an amount equal to the savings against any construction costs incurred by Tenant. In the event that such criteria changes result in extra construction costs to the Landlord, then Tenant shall pay the Landlord the

Article 20, as well as all terms, conditions and provisions contained herein shall apply to: (I) the undersigned Tenant, (ii) any future Tenant hereunder and any resulting holder, transferee, and conveyee of any right or interest of Tenant hereunder; (iii) each and every assignee, sublessee, transferee, and conveyee .(including but not limited to any mortgagee) of any of the foregoing.

Landlord shall not permit business in said shopping center which shall be operated on a part-time basis (i.e. for only a portion of the week or month). The foregoing shall not require the continuous use or occupation of any portion of said shopping center but is only intended to prohibit businesses in said shopping center which operate in a part-time basis for only a portion of the week or month, such as discount store operation which is open only as it has stock available to sell.

No building, structure or business shall be constructed or operated in said shopping center which shall be inconsistent with the operation of a family type, retail and commercial shopping center and any building, structure or business shall be attractive, both in its physical characteristics and in appeal, to customers and retail trade.

No use of said shopping center shall interfere with the normal non-exclusive use of the common areas or impede the free flow of pedestrian or vehicular traffic thereon.

Said shopping center and any improvements thereon shall be .continuously maintained and repaired as and by the party required hereunder, so as to at all times be in first class condition, free and clear of all debris and accumulation of water.

Article 41 provides in pertinent part:

"Notwithstanding anything contained in this lease to the contrary, if at any time during the primary term of this lease and any option periods, Tenant decides to ceased its business operation in the demised premises, Tenant shall provide Landlord with one hundred twenty (120) days prior written notification of its intention to do so. Within one hundred twenty days after the receipt of such notice, Landlord at its sole discretion, shall have the right to terminate this lease and recapture the demised premises from Tenant, or to decide .to maintain this lease in full force and effect, accepting the discontinued operation of Tenant. ·

If Landlord shall elect to terminate this lease and recapture the demised premises:

a. Landlord shall give Tenant a written notification of its decision before the expiration of said one hundred twenty (120) day period; ...

If, on the other hand, Landlord elects not to terminate this lease pursuant to the provisions of this article 41:

a. Landlord shall give Tenant a written notification of its decision before the expiration of said one hundred twenty (120) day period; ..."

extra construction costs resulting from such changes."

Second, Defendants submit that by letter dated December 1, 1993, Defendant PACE notified P.C.M.E. that it would not open for business in the property covered by the Lease Agreement, and indicated that they "would like to have construction efforts tapered in order to provide for a greater variety of uses." This letter also confirmed PACE's request to complete the roof, button up the entryway, and not install the skylights. Finally, the deposition and expert witness report included in support of the motion for partial summary judgment indicate that the changes requested by PACE directing that construction efforts be tapered, resulted in savings to P.C.M.E. in construction costs of the building in the amount of $800,000.00 dollars. Since these facts were not contested, they are deemed admitted pursuant to local rule 311.12. *Ayala–Gerena v. Bristol Myers–Squibb Company*, 95 F.3d at 95; *Stepanischen v. Merchants Despatch*, 722 F.2d. at 930.

■ Since there are no material facts in question, and the terms of Lease Agreement regarding construction costs are clear, the court proceeds to resolve the matter. Clause 6 of the Lease agreement clearly establishes that cost savings resulting from criteria changes in construction would result in a credit in favor of Tenant, PACE, against extra construction costs incurred by Landlord, P.C.M.E., resulting from other criteria changes. The changes requested by PACE directing that construction efforts be tapered, resulted in savings to P.C.M.E. in construction costs of the building in the amount of $800,000.00. This yields a credit against construction costs in favor of Tenant, PACE, in the amount of $800,000.00 which exceeds and offsets the $210,790.89 claimed by Plaintiff for other criteria changes.

**WHEREFORE** the Court **grants** the motion for partial summary judgment and **dismisses** Count IV of the Complaint with prejudice. Judgment will be entered accordingly.

## V. FRAUD IN THE FORMATION OF THE CONTRACT.

■ Under Puerto Rico law, fraud which affects a contracting party is known as "dolo" or deceit. *Fournier v. Eastern Airlines, Inc.*, 655 F.Supp. 1037, 1038–1039 (D.P.R.1987). Contractual "dolo" has two basic applications regulated by the Civil Code of Puerto Rico. *Marquez v. Torres Campos*, 111 P.R. Dec. 854, 863 (1982). One application refers to "dolo" in the formation of the contract [3], and the other refers to "dolo" in the performance of the contractual obligations [4]. The case under our consideration is predicated on the first application of "dolo". Under this application "[t]here is "dolo" when by words or insidious machinations on the part of one of the contracting parties the other is induced to execute a contract which without he would not have made." (our translation) Civil Code of Puerto Rico, article 1221, P.R. Laws Ann. tit. 31 sec. 3408. "Dolo" could either be "substantial" ("grave"), when it determines the consent of the parties, or "incidental" when it merely influences the consent. Civil Code of Puerto Rico, article 1222, P.R. Laws Ann. tit. 31 sec. 3409. A finding of "substantial dolo" would result in the nullity of the contract, whereas "incidental dolo" would give rise to a claim for damages. *Id.* The civil law doctrine recognizes that "dolo" may arise from the acts or omissions of one of the contracting parties to induce the other into error. Puig Brutau, T.II, vol. I, p. 93, 3rd ed.1988. The Supreme Court of Puerto Rico has sustained a finding of "dolo" when one of the contracting parties remained silent as to one important condition of the contract. *Marquez v. Torres Campos*, 111 P.R. Dec. at 871.

■ The rule in Puerto Rico is that "dolo", like fraud, is not presumed. *Miranda Soto v. Mena Rios*, 109 P.R. Dec. 473, 478 (1980). The party alleging "dolo" bears the burden of proof. *Canales v. Pan Ameri-*

---

3. "Dolo" in the formation of contracts is regulated by Civil Code, articles 1217, 1221 and 1222, setting forth the requirements for the validity of contracts.

4. "Dolo" in the performance is regulated by Civil Code, articles 1054, 1055 and 1060, setting forth the effect and nature of obligations.

*can*, 112 P.R. Dec. 329, 340 (1982). "In order to prove dolo [the party] would have to demonstrate the intentional fault or bad faith of the person to whom it is imputed, given that good faith is presumed." *Citibank v. Dependable*, 121 P.R. Dec. 503, 519 (1987). "The academic preparation, social and economic conditions, and the relationships and type of business in which the parties are involved are particularly significant factors in determining the existence of "dolo" which would void their consent. *Id.*

■ Plaintiff alleges that defendants fraudulently induced it into entering into the Lease Agreement by representing that PACE was a better Tenant than Sears, whom plaintiff was also considering as possible Tenant for the premises, and concealing the possibility that PACE would not open the store for business in the shopping center. Plaintiff alleges that when Kmart executed the guarantee, defendants already knew or should have known that the store would not be opened. Defendants contend by way of partial summary judgment that they did not provide any false information in trying to obtain the lease agreement and that Plaintiff has failed to proffer any evidence that at the time prior to the signing of the Lease Agreement, defendants knew or should have known that there was a possibility that the PACE Warehouse Store in Plaza del Caribe Mall II would not be opened. Plaintiff opposes the motion for partial summary judgment arguing that there is a question of material fact as to whether defendants already knew at the time of entering into the Lease Agreement that the PACE store would not be opened. To support its contention Plaintiff has proffered evidence to show that on or around the time they entered into the contract Defendants were in negotiations with WalMart executives for the sale of certain PACE stores, that said sale was consummated shortly thereafter, and that by the end of that year Pace had closed its remaining stores or sold them to WalMart. Defendants have not controverted this information, nor have they accompanied any suitable documentation (i.e. affidavits, depositions, interrogatories, etc.) denying that when they entered into the contract they already knew that the PACE store would not be opened.

Notwithstanding that Plaintiff bears the burden of proof on his claim for "dolo", at this stage of motion for summary judgment defendants bears the initial burden to show that there is an absence of evidence to support plaintiff's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). Defendants have failed to meet their burden. Defendants bare assertion that Plaintiff's had not proffered any evidence to support that at the time prior to the signing of the Lease Agreement defendants knew or should have known that there was a possibility that the PACE Warehouse Store in Plaza del Caribe Mall II would not be opened, can not withstand the depositions attached to Plaintiff's opposition. The depositions show that around the time the parties entered into the contract defendants were in negotiations with WalMart executives for the sale of certain PACE stores, that said sale was consummated shortly thereafter, and that by the end of that year Pace had closed its remaining stores or sold them to WalMart. Defendants have not contested this information, nor have they accompanied any suitable documentation (i.e. affidavits, depositions, interrogatories, etc.) denying that on or around the time they entered into the contract they already knew that the PACE store at Plaza Caribe II would not be opened. Therefore, at this summary judgment stage, there still is a question of material fact created by the circumstantial evidence provided by Plaintiff, as to whether Defendant knew at the time of entering into the contract that the store would not be opened. At this summary judgment stage, the Court is obliged to review the record in the light most favorable to the nonmoving party and to draw all reasonable inferences in favor of the nonmoving party. *LeBlanc v. Great American Insurance Company*, 6 F.3d at 841. Even though at this stage, it is not clear whether the sales of the PACE stores were part of an integrated plan, the evidence offered by Plaintiff, if uncontroverted at trial, could permit a rational jury to infer that defendants had plans to sell all of Pace's stores and close its operations at the time they entered into the contract. It may very well be that when all the

94

evidence is evaluated by the jury, including the findings of credibility that will be made, the jury rejects this inference, however at this stage of the case the court is obliged "to draw all reasonable inferences in the non-moving party's favor". *Id.*

**WHEREFORE** Defendants' motion for partial summary judgment on the claim for fraud ("dolo") in the formation of the contract is hereby **denied.**

**IT IS SO ORDERED.**