# United States Court of Appeals
## For the First Circuit

No. 18-2075

LUIS A. FELICIANO-MUÑOZ;
AIR AMERICA, INC.,

Plaintiffs, Appellants,

v.

FRED J. REBARBER-OCASIO,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Marcos E. López, U.S. Magistrate Judge]

Before

Torruella, Dyk,* and Barron,
Circuit Judges.

José R. Olmo-Rodríguez, for appellants.
Carlos A. Mercado-Rivera, with whom Mercado Rivera Law Offices was on brief, for appellee.

August 11, 2020

---

* Of the Federal Circuit, sitting by designation.

**TORRUELLA**, **Circuit Judge**. Plaintiff-Appellant Luis A. Feliciano-Muñoz ("Feliciano") appeals the district court's grant of summary judgment and dismissal of his complaint with prejudice with respect to his breach of contract and incidental deceit claims against Defendant-Appellee Fred J. Rebarber-Ocasio ("Rebarber"). Although we agree with the district court that the exact nature of Feliciano's allegations are elusive, we find that the district court erred in concluding that Feliciano did not assert a breach of contract claim. The court also abused its discretion when it employed the Federal Rules of Civil Procedure Rule 12(b)(6) standard in dismissing Feliciano's breach of contract claim, instead of the summary judgment standard, when the court had before it a motion for summary judgment. Therefore, we vacate the district court's decision on this issue and remand with instructions to reinstate the breach of contract claim. Regarding Feliciano's secondary theory of liability related to deceit or "dolo," we affirm the district court's grant of summary judgment.

**I.**

**A. Factual Background**

In September 2014, Feliciano approached Rebarber to buy all of the shares of Air America, Inc. ("AA"), an outfit owned by Rebarber that provided airline services pursuant to Federal Aviation Regulations Part 135. In an earlier commercial venture,

-2-

Feliciano had bought and owned Cub Pipers, small one-passenger airplanes, which are considerably different from the multi-engine, multi-passenger commercial airplanes that comprised AA's six airplane fleet.

Feliciano first sent Rebarber a letter of intent ("LOI") on September 30, 2014, in which he proposed to purchase one hundred percent of AA's shares at a price of $1,500,000. On October 21, 2014, Rebarber sent an email rejecting the terms of the first LOI, stating his intention that the deal be "as is" without language qualifying the deal as "offer subject to" or "satisfaction to the buyer." The email stated that "[i]t was [Rebarber's] understanding that [the buyer] ha[d] everything [he] need[ed] to make an unconditional offer" and that Rebarber was "more than willing to be accountable for any claims, penalties, fees, law[suits], unpaid invoices, etc[.] up to the closing date." Feliciano then sent a second LOI on November 6, 2014, and finally, a third was issued on November 12, 2014, which Rebarber signed. The final LOI did not contain language to the effect of "offer subject to" or "satisfaction to the buyer" and did not reference the condition of the airplanes or guarantee the operation of the airline or the retention of employees or pilots. Nor did the final LOI include "as is" language.

-3-

During this period, to assist him with the purchase, Feliciano hired two accountants and an aviation consultant, Verlyn Wolfe. Wolfe's company Wolfe Aviation offers advice on aircraft acquisitions, sales, and services. Rebarber provided Feliciano with spreadsheets containing information about the airplanes that had been requested by the aviation consultant. Rebarber provided the airplane serial numbers, as well as lists of the airplanes' avionics and equipment. According to Feliciano, Rebarber disallowed mechanical inspection of the airplanes because it would hurt the morale of AA's employees if they believed Rebarber was selling. Still, Feliciano, accompanied by his accountant, was allowed to, and did in fact, visually inspect the airplanes and take pictures, including photos of one of the plane's interior. As Feliciano pursued AA, at least one of his consultants attempted to sway him to abandon the deal, advice that he did not heed.

The deal culminated on December 17, 2014, when Feliciano and Rebarber executed a Stock Purchase Agreement ("SPA"). For a price tag of $1,300,000, Rebarber sold eighty percent of his stock in AA to Feliciano. In addition to a prior $100,000 deposit, Feliciano paid $950,000 at signing with a final installment of $250,000 scheduled for twelve months later, secured by a lien on one of the company's airplanes. The SPA stated that it contained the entire agreement between the parties. The SPA, like the third

-4-

LOI, contained neither "as is" language, nor the language "offer subject to" or "satisfaction to the buyer" and did not expressly reference the condition of the airplanes or guarantee the operation of the airline or the retention of employees or pilots. However, the SPA did contain language that, according to Feliciano, was inserted to safeguard his investment "[p]recisely because Plaintiff Feliciano was not allowed to inspect the [airplanes'] mechanical equipment with mechanical experts." Feliciano points to the following language at Article I, Section C(ii) in the SPA as protecting his investment:

> The Corporation and/or Seller [Rebarber] have satisfied 100% of any known accrued expenses and debt of the Corporation. Any unrecorded or undisclosed expenses and liabilities related with the operations of the Corporation prior to this date (the "Unrecorded Expenses") found by the Purchaser [Feliciano] after the date hereof, shall be paid by Seller to the Corporation upon claim thereof by Purchaser or the Corporation supported by adequate evidence. If Seller fails to reimburse the Corporation, in addition to any rights available at law to collect the Unrecorded Expenses, Purchaser shall have the right to deduct or set-off the Unrecorded Expenses from face value of the Note. All expenses incurred by the Corporation prior to the date hereof shall run on the account of the Seller; and all expenses incurred by the Corporation after the date hereof will run on account of the Corporation. In addition, any expenses incurred by the Corporation after the date hereof that should have been incurred by the Corporation prior to this date, will be on the account of the Seller and shall be considered Unrecorded Expenses.

According to Feliciano, Section A of Article IV of the SPA was also included to safeguard his investment by indemnifying him against a breach of Rebarber's representations:

> Seller agrees to indemnify and save and hold harmless the Purchaser from and against all losses, claims, causes of action, obligations, suits, costs, damages, expenses . . . and liabilities which the Purchaser . . . may suffer or incur or be compelled to or be subject to and which are caused by or arise directly or indirectly by reason of the breach of any representations and warranties of the Seller contained herein.

Feliciano explains that Sections D and I of Article II serve as said representations, for which Rebarber would be liable if breached:

> The Corporation has all operating authority, licenses, franchises, permits, certificates, consents, rights and privileges (collectively "Licenses") as are necessary or appropriate to the operation of its business as now conducted and as proposed to be conducted and which the failure to possess would have a material adverse effect on the assets, operations or financial condition of the Corporation. Such Licenses are in full force and effect, no violations have been or are expected to have been recorded in respect of any such Licenses, and no proceeding is pending that could result in the revocation or limitation of any such Licenses. The Corporation has conducted its business so as to comply in all material respects with all such Licenses . . . . [And t]he Corporation has no material unrecorded or unreported liabilities or contingencies.

Prior to signing the SPA, Feliciano represents that he evaluated "AA's financial records and aircraft flight and maintenance log books from which it appeared that AA was operating

-6-

in compliance with regulations, and that its aircrafts [sic] were in excellent condition[]." Feliciano also states that Rebarber assured him that the airplanes were in excellent condition and that AA could operate with its current staff of two full time pilots and one part-time pilot.[1] Additionally, Rebarber had assured Feliciano that the airline operated in accordance with Federal Aviation Administration ("FAA") rules and regulations. Regarding the airplane logs, only scheduled inspections and routine maintenance appeared on the logbooks prior to December 14, 2014; there were no entries then, or in the year that followed, that would ground the airplanes.

Only a week after signing the SPA, on December 23, 2014, Feliciano discovered "maintenance[] and repair[] issues that placed the licenses and permits at risk which were not recorded on the logbooks and should have been recorded and repaired before the purchase."[2] AA thus incurred expenses to repair the airplanes and

---

[1] Even though at this procedural juncture we are obligated to construe the facts in Feliciano's favor, see Tang v. Citizens Bank, N.A., 821 F.3d 206, 215 (1st Cir. 2016), this statement, supported only by Feliciano's sworn affidavit, appears to contradict Feliciano's own admissions in his response to Rebarber's motion for summary judgment. More on this later.

[2] Despite Feliciano's sworn statement to this effect, the allegation that Feliciano discovered issues with the airplanes by December 23, 2014 is not otherwise supported by the uncontested summary judgment record. The record reflects that the first issue with an aircraft was noted on December 28, 2014 and was corrected that day. Another aircraft flew through early January until

-7-

purchase new equipment, which according to Feliciano, "should have been done before the SPA." In addition, AA incurred the collateral costs of chartering flights, the result of having to ground the airplanes, according to Feliciano.

A year later, Feliciano's final payment to Rebarber came due under the terms of the deal. Feliciano notified Rebarber that he was exercising his right to set off a claim against Rebarber for the full amount of $250,000 and was requesting an additional $25,395.46 to top it off. Feliciano charged Rebarber with having breached the contract because equipment in all six airplanes had either been broken or inoperative and the airplanes had had to be grounded and expenditures incurred in order for the airplanes to be airworthy. Rebarber, in turn, rejected these allegations. Feliciano then sent him the $250,000 payment, and approximately a year later, filed this suit.

## B. Procedural History

On September 26, 2016, Feliciano and AA filed a diversity action against Rebarber in the United States District Court for the District of Puerto Rico. The case was referred to a Magistrate Judge pursuant to the parties' consent. With leave from the court,

---

scheduled maintenance was performed. For a description of the airplanes' issues and when they arose, as confirmed by Feliciano, see Feliciano-Muñoz v. Rebarber-Ocasio, Civ. No. 16-2719 (MEL), 2018 WL 8805486, at *3 (D.P.R. Sept. 28, 2018).

on April 28, 2017, Feliciano and AA[3] amended their complaint. The complaint alleged "an action for a breach of contract arising from the false representations of the Defendant regarding the Corporation's compliance with applicable FAA laws and regulations." The complaint cited three contractual provisions that, according to Feliciano, contained representations that he had "reasonably relied on . . . at the moment of the execution of the SPA" and that Rebarber had allegedly breached. Feliciano requested damages totaling $520,673.16 plus interest, costs, and attorney's fees. On April 30, 2017, Rebarber answered the complaint, denying Feliciano's allegations that Rebarber had breached the contract and asserting that Feliciano had purchased the airline without conducting due diligence and any post-purchase difficulties were related to Feliciano's own mismanagement and unfitness. After the close of discovery, on January 16, 2018, Rebarber moved for summary judgment. Feliciano opposed the summary judgment motion, and Rebarber replied.[4] On August 30,

---

[3] Because the district court dismissed AA from the suit, a decision that AA does not appeal, for our purposes we refer to Feliciano as the singular plaintiff.

[4] As the district court pointed out, Rebarber's reply to Feliciano's opposition did not comply with Local Rule of Civil Procedure 56 for having failed to "admit, deny, or qualify the additional facts submitted by Plaintiffs." Feliciano-Muñoz, 2018 WL 8805486, at *2 n.2. "Therefore, Plaintiffs' additional facts w[ere] taken into account, and Defendant's additional facts w[ere]

2018, the parties filed their joint proposed pretrial order, pending the district court's decision on summary judgment.

On October 18, 2018, the district court granted Rebarber's motion for summary judgment. The district court, finding Feliciano's allegation in the amended complaint "elusive," determined that "while Plaintiffs ha[d] spoken the language of breach of contract, what Plaintiffs [we]re in essence alleging [wa]s a claim of deceit, known as 'dolo' under Puerto Rico contract law." Feliciano-Muñoz v. Rebarber-Ocasio, Civ. No. 16-2719 (MEL), 2018 WL 8805486, at *4 (D.P.R. Sept. 28, 2018). The district court, having before it a motion for summary judgment, dismissed the breach of contract claim under Federal Rule of Civil Procedure 12(b)(6) for failure to "state a claim to relief that [wa]s plausible on its face." Id. at *5 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). Next, applying the test for deceit in the formation of the contract, the court proceeded to find that, although a reasonable jury could find that Rebarber had made false representations related to the aircraft and their compliance with FAA regulations, Feliciano was a sophisticated buyer who had previous experience buying and owning aircraft and had been assisted in the deal by three consultants. Id. at *5-7. Therefore,

---

disregarded . . . ." Id.

-10-

the district court concluded no jury could find reasonable reliance when Feliciano "chose to rely on [Rebarber]'s representations that [AA] was operating in compliance with FAA regulations and that the airplanes were in excellent condition, rather than insisting on a mechanical inspection." Id. at *8. Feliciano now appeals this decision. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## C. Discussion

### 1. Breach of contract

"We review the district court's decision to treat the defendant['s] motion for summary judgment as a motion to dismiss for abuse of discretion." Ríos-Campbell v. U.S. Dep't of Com., 927 F.3d 21, 24 (1st Cir. 2019) (citing Vélez v. Awning Windows, Inc., 375 F.3d 35, 41 (1st Cir. 2004)). "The dispositive question is whether, in the absence of special circumstances or persuasive reasons, the district court abused its discretion in transmogrifying a fully developed motion for summary judgment, replete with exhibits gleaned partially through discovery, into a motion to dismiss for failure to state a claim." Id. at 24 (holding sua sponte that the district court abused its discretion when it converted the defendants' motion for summary judgment into a motion to dismiss). In Ríos-Campbell, this Court found that although "the parties d[id] not quarrel with the district court's

-11-

treatment of the defendant's motion for summary judgment as a motion to dismiss, the issue cast[] a large shadow over any attempt to review the ruling below."  Id.

Although support in our rules can be found for sometimes treating a motion to dismiss for failure to state a claim as a motion for summary judgment, see Fed. R. Civ. P. 12(d); Beddall v. State St. Bank & Tr. Co., 137 F.3d 12, 17 (1st Cir. 1998), "we know of no authority that allows for the reverse conversion of a summary judgment motion into a motion to dismiss for failure to state a claim."  Ríos-Campbell, 927 F.3d at 25.  "Just because a cucumber can be turned into a pickle does not mean that a pickle can be turned into a cucumber."  Id.

As explained above, the district court, when confronted with Rebarber's motion for summary judgment, determined that to the extent the complaint contained a breach of contract claim, such a claim did not survive the threshold question of plausibility, the familiar standard appropriate at the motion to dismiss stage.  See Feliciano-Muñoz, 2018 WL 8805486, at *5 ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (quoting Iqbal, 556 U.S. at 678)); see, e.g., Zell v. Ricci, 957 F.3d 1, 7 (1st Cir. 2020) ("[F]irst, 'isolate and ignore statements in the complaint that simply offer

legal labels and conclusions or merely rehash cause-of-action elements[,]' then 'take the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief.'" (alterations in original) (quoting Zenón v. Guzmán, 924 F.3d 611, 615–16 (1st Cir. 2019))). The court went on to explain that

> [w]hile Plaintiffs did invoke the term "breach of contract," and not "deceit," it should come as no surprise to Defendant that Plaintiffs are in fact bringing a deceit claim for two reasons. First, in the joint proposed pretrial report, Plaintiffs argue that "Defendant's actions constitute deceit in the formation of the contractual relationship (also known as 'dolo' under the Code)." Second, in his motion for summary judgment, Defendant raises some arguments which are relevant to a deceit claim, and not relevant to a breach of contract claim. Specifically, Defendant argues that summary judgment should be granted because Mr. Feliciano-Muñoz had previous experience buying and owning aircrafts [sic] and because he retained three consultants to assist him with the purchase. Mr. Feliciano-Muñoz's previous experience buying and owning aircrafts [sic] and hiring of consultants is irrelevant to the question of whether Rebarber later breached the terms of the contract between him and Mr. Feliciano-Muñoz.

Feliciano-Muñoz, 2018 WL 8805486, at *5 (record citations omitted).

On appeal, Feliciano requests that this Court vacate the district court's decision to dismiss the breach of contract claim and remand with instructions that the contract claim be reinstated. Feliciano argues in his opening brief that his complaint alleged

breach of contract by identifying which clauses in the SPA had been breached, the specific facts which led to their breach, and an accounting of the costs that resulted, which according to the SPA, should have been covered by Rebarber. He posits that the breach of contract claim, "while factually intertwined with the allegations against Rebarber for making false representations," should "stand alone" and explains that, while the proposed pretrial order submitted to the court added the claim of deceit as a secondary theory of liability, there was no indication that the contract claim had dropped out. In turn, Rebarber conceded at oral argument that the complaint contained allegations of a breach of contract and that he did not argue otherwise in the district court, instead training his arguments on the facts developed in the record (as is appropriate at the summary judgment stage). While Rebarber contends that the district court's maneuver was ultimately to Feliciano's benefit, his brief on appeal in support of the argument that Feliciano did not sufficiently plead a breach of contract claim relies primarily on the record developed beyond the complaint and the SPA attached to it. Rebarber's repeated references to material outside the complaint disaffirm the district court's approach.

Here, we find that the district court erred in concluding that Feliciano did not assert a breach of contract claim and abused

-14-

its discretion when it converted Rebarber's motion for summary judgment on said claim into a motion to dismiss. Rebarber chose to answer the complaint rather than move to dismiss it under the proper procedures and filed his motion for summary judgment months after the close of discovery. See Ríos-Campbell, 927 F.3d at 25 ("The defendants chose not to file a motion to dismiss but instead to move for summary judgment, and that choice should be given some weight . . . ."). Notwithstanding the addition in the proposed pretrial order of the deceit claim (which can be asserted concurrently with a breach of contract claim, see, e.g., P.C.M.E. Com., S.E. v. Pace Membership Warehouse, Inc., 952 F. Supp. 84, 91, 94 (D.P.R. 1997)), there is no indication in the record that Feliciano was no longer pressing the breach of contract claim. The district court observed that Rebarber had raised arguments related to Feliciano's "previous experience buying and owning aircrafts [sic] and hiring of consultants," which would be irrelevant to the breach of contract claim but relevant to a deceit claim.[5] But it is unclear why a purported inadequacy in the moving party's formation of arguments would warrant the court to accommodate that party's failure to satisfy its own burden as the

---

[5] Reasonable reliance is, of course, not an element of a breach of contract claim. See Markel Am. Ins. Co. v. Díaz-Santiago, 674 F.3d 21, 31 (1st Cir. 2012).

moving party and to conveniently convert the motion to apply a standard that is less evidentiarily demanding in the moving party's favor. See Fed. R. Civ. P. 56(a) & 56(c)(1); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion."). On summary judgment, the initial burden was Rebarber's, and if the district court found that there was a deficiency in Rebarber's motion, it could have taken the appropriate measures pursuant to Federal Rules of Civil Procedure 56(e) and (f). Therefore, neither the district court's questionable reconstruction of Feliciano's claims, nor Rebarber's purportedly irrelevant arguments, justify the court's move to convert without notice a motion for summary judgment into a motion to dismiss.

We do, however, recognize that this case differs from Ríos-Campbell in at least one key respect: here, the district court did decide a separate claim under the summary judgment framework. While this might mitigate the policy concern expressed in our precedent that the "invocation of the plausibility standard after the completion of discovery would defeat th[e] goal" of avoiding "unnecessary discovery," Ríos-Campbell, 927 F.3d at 26 (first citing then quoting Grajales v. P.R. Ports Auth., 682 F.3d 40, 46 (1st Cir. 2012)), judicial efficiency would have been better served

here by dealing directly with Rebarber's arguments put forth in his summary judgment motion, which purported to address Feliciano's breach of contract claim. For the foregoing reasons, we vacate the district court's decision dismissing the contract claim under Rule 12(b)(6) and remand with instructions to reinstate the contract claim for review on summary judgment.

## 2. Dolo Claim

We review the grant of summary judgment de novo and draw all reasonable inferences in favor of the non-moving party. Tang v. Citizens Bank, N.A., 821 F.3d 206, 215 (1st Cir. 2016) (citing Pérez-Cordero v. Wal-Mart P.R., Inc., 656 F.3d 19, 25 (1st Cir. 2011)). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is 'genuine' if it can 'be resolved in favor of either party,' and a fact is 'material' if it 'has the potential of affecting the outcome of the case.'" Tang, 821 F.3d at 215 (quoting Pérez-Cordero, 656 F.3d at 25). The party moving for summary judgment bears the initial burden of showing that no genuine issue of material fact exists. Celotex Corp., 477 U.S. at 323. Then, "[the nonmoving party] must respond to a properly supported motion with sufficient evidence to allow a reasonable jury to find in its favor 'with respect to each issue on which [it] has the burden of

proof.'"  Prado Álvarez v. R.J. Reynolds Tobacco Co., 405 F.3d 36, 39 (1st Cir. 2005) (alteration in original) (quoting DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997)).  The non-movant cannot merely "rely on an absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute."  McCarthy v. Nw. Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995) (citing Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990)).

Under Puerto Rico contract law, "[t]here is deceit when by words or insidious machinations on the part of one of the contracting parties the other is induced to execute a contract which without them he would not have made."  P.R. Laws Ann. tit. 31, § 3408.  Deceit, or dolo, can exist either "in the 'formation' of a contract where a party obtains the consent of another through deceptive means," or "in the 'performance' of a contractual obligation where a party knowingly and intentionally, through deceitful means, avoids complying with its contractual obligation."  Generadora de Electricidad del Caribe, Inc. v. Foster Wheeler Corp., 92 F. Supp. 2d 8, 18 (D.P.R. 2000) (first citing P.R. Laws Ann. tit. 31, §§ 3404-3409 then citing P.R. Laws Ann. tit. 31, §§ 3018-3019).  "Furthermore, dolo can be considered either 'substantial' ('grave'), when it determines the consent of a party, or 'incidental' when it merely influences the consent."

Burk v. Paulen, 100 F. Supp. 3d 126, 134 (D.P.R. 2015) (quoting P.R. Laws Ann. tit. 31, § 3409 and P.C.M.E., 952 F. Supp. at 92). Substantial dolo nullifies the contract. See P.R. Tel. Co. v. SprintCom, Inc., 662 F.3d 74, 99 (1st Cir. 2011) (citing Colón v. Promo Motor Imps., Inc., 144 P.R. Dec. 659, 668 (1997)). Incidental dolo, on the other hand, "merely gives rise to a claim for damages." Burk, 100 F. Supp. 3d at 134; see Portugués-Santana v. Rekomdiv Int'l, 657 F.3d 56, 59 (1st Cir. 2011) (affirming a jury verdict awarding damages for a dolo claim "alleging [defendants'] false representations . . . fraudulently induced [the plaintiff] to enter into retainer agreements").

Dolo, like fraud, may not be presumed, and "the party alleging dolo bears the burden of proof" and must "demonstrate the intentional fault or bad faith of the person to whom it is imputed." Burk, 100 F. Supp. 3d at 135 (quoting P.C.M.E., 952 F. Supp. at 92); see Miranda Soto v. Mena Eró, 9 P.R. Offic. Trans. 628, 634 (1980). "[I]n determining whether to permit invalidation of a contract on the basis of dolo, Puerto Rico courts place considerable weight on the education, social background, economic status, and business experience of the party seeking to avoid the contract." Citibank Glob. Markets, Inc. v. Rodríguez Santana, 573 F.3d 17, 29 (1st Cir. 2009) (citing Cabán Hernández v. Philip Morris USA, Inc., 486 F.3d 1, 12 (1st Cir. 2007)); see also

-19-

Citibank v. Dependable Ins. Co., 21 P.R. Offic. Trans. 496, 512 (1988). "The cases in which a party has been held to a contract by virtue of that party's sophistication involve a lack of evidence of bad faith on the part of the defendant, a plaintiff that is a sophisticated business entity, or both." Estate of Berganzo-Colón ex rel. Berganzo v. Ambush, 704 F.3d 33, 42 (1st Cir. 2013) (citations omitted); see, e.g., Cabán Hernández, 486 F.3d at 12 ("[While] the appellants are reasonably well-educated, experienced individuals, all of whom have held responsible positions in the private sector . . . they have presented no significantly probative evidence of deception."); see also Citibank Glob. Markets, 573 F.3d at 29 ("Fernandez's sophistication, coupled with his failure to allege sufficient, colorable bad faith on the part of Smith Barney, defeats any claimed dolo in this case.").

As we mentioned above, the district court credited Feliciano with having alleged a claim for deceit, or dolo, under Puerto Rico contract law. See Feliciano-Muñoz, 2018 WL 8805486, at *4. Although the dolo claim was only first named as such in the proposed pretrial order,[6] the amended complaint stated that

---

[6] In presenting his dolo claim, Feliciano actually articulated the test for fraud, see R. at 31 (citing P.R. Power Auth. v. Action Refund, 472 F. Supp. 2d 133, 138–39 (D.P.R. 2006)). Puerto Rico Power Authority relies on the legal test articulated in In re Las Colinas, Inc., 294 F. Supp. 582, 598–99 (D.P.R. 1968). "[T]he claims in In re Las Colinas centered around fraud, not dolo." See Huongsten Prod. Imp. & Exp. Co. v. Sanco Metals LLC, 810 F. Supp.

-20-

"[t]his is a breach of contract arising from false representations and warranties" whereby "Feliciano reasonably relied on Rebarber's representations and warranties." Presumably responding to this allegation, Rebarber's motion for summary judgment argued that Feliciano, who had several professionals assisting him with the deal and who had prior experience purchasing airplanes, had been provided with lists of the airplanes' serial numbers, avionics, and equipment and had had the opportunity to visually inspect the airplanes with one of his consultants. Thus, Rebarber's motion posited that Feliciano had not reasonably relied on Rebarber's alleged representations.[7] In response, Feliciano argued that, notwithstanding the fact that he had retained experts to assist with the deal, Rebarber had forbidden him from conducting a mechanical inspection of the aircraft and "[p]recisely[] for said

_____

2d 418, 433 (D.P.R. 2011) (explaining that fraud and dolo are distinct concepts that should not be confused).

[7] In addition, Rebarber's motion for summary judgment argued that based on the parties' exchanges prior to the SPA, Feliciano knew the deal was "as is"; Rebarber "represented a truthful fact when [he] guaranteed that the company was in compliance with the Federal Aviation Regulations and that the certificates were in full effect" and Feliciano admitted as much in his deposition; and that all expenses related to the aircraft post-dating the SPA were for "routine maintenance, normal unexpected repairs or voluntary adding of non-regulatory equipment." However, because Rebarber failed to comply with several orders pertaining to discovery, this final argument, relying on expert reports that the court excluded, is not supported by the summary judgment record.

reason the SPA contain[ed] provisions for Plaintiff Feliciano to recover from Defendant Rebarber any expenses for repairs that Defendant Rebarber should have done before the SPA." In addition, Feliciano alleged that the airplanes' records used by his aviation consultant to evaluate the airplanes were "not true or reliable." He also stated that the airplanes he had previously owned were different from AA's airplanes.

In an effort to make sense of the parties' arguments, the district court concluded that Feliciano was essentially alleging dolo, akin to fraud in the inducement, which requires the asserting party to show "(1) a false representation by the defendant; (2) the plaintiff's reasonable and foreseeable reliance thereon; (3) injury to the plaintiff as a result of the reliance; and (4) an intent to defraud." Feliciano-Muñoz, 2018 WL 8805486, at *4 (citing Kellogg USA v. B. Fernández Hermanos, Inc., 2010 WL 376326, No. 07-1213 (GAG/BJM), at *12 (D.P.R. Jan. 27, 2010)); see Portugués-Santana, 657 F.3d at 62 (citing P.R. Elec. Power Auth. v. Action Refund, 515 F.3d 57, 66 (1st Cir. 2008)); Lummus Co. v. Commonwealth Oil Ref. Co., 280 F.2d 915, 933 (1st Cir. 1960). The district court, accepting for purposes of summary judgment Feliciano's allegations that Rebarber had made misrepresentations about the airplanes, nevertheless, determined that the circumstances showed that Rebarber was a sophisticated

-22-

buyer who had not reasonably relied on Rebarber's representations about AA's compliance with FAA regulations or the airplanes' excellent condition. Feliciano-Muñoz, 2018 WL 8805486, at *8.

On appeal, Feliciano argues that the district court erred in considering whether or not Feliciano was a sophisticated buyer. He explains that the cases the court relied on to set forth the law of sophisticated buyer all dealt with claims of serious dolo, where the party alleging deceit was seeking to invalidate the contract. See Kellogg USA, 2010 WL 376326, at *11; Citibank Glob. Markets, Inc., 573 F.3d at 29; Citibank, 21 P.R. Offic. Trans. at 512; Miranda Soto, 9 P.R. Offic. Trans. 628. As Feliciano is only requesting damages for incidental dolo, he insists the law of sophisticated buyer is inapplicable. In the alternative, Feliciano posits that his "education, social background and economic status w[ere] never put into evidence for the district court to consider the degree of his sophistication as a buyer, or the degree in which he relied on the false representations by Rebarber." Finally, Feliciano avers that there was reasonable reliance and that the district court's determination that Feliciano "threw caution to the wind and chose to rely on Rebarber's representations . . . rather than insisting on a mechanical inspection" was contrary to the evidence in the record.

First, we acknowledge that most of the cases applying the sophisticated party concept relate to the invalidation of contracts under a theory of serious dolo. See, e.g., Citibank Glob. Mkts., Inc., 573 F.3d at 29. But see Portugués-Santana, 657 F.3d at 62 (rejecting argument in a case of incidental dolo that plaintiff's "education and business experience" meant that his reliance on defendants' assurances was unreasonable not because the plaintiff's background was irrelevant, but because defendants' assurances were made following the contract's formation). Nonetheless, we find no support in these precedents for Feliciano's claim that the same principles should not be applied to a deceit claim seeking damages, and Feliciano has articulated no other reason to reject this approach. Therefore, we confirm that the district court applied the correct legal framework for the dolo analysis.[8] See Citibank Glob. Mkts., Inc., 573 F.3d at 29 (determining that appellant's argument against the application of the sophisticated party concept because the "Puerto Rico Supreme Court has been expanding the law of dolo[] and . . . is increasingly viewing failures to speak during contract negotiations with a

---

[8] Although we acknowledge that dolo can include a broader swath of conduct than just fraud in the inducement, see Burk, 100 F. Supp. 3d at 134-35, Feliciano does not contest this aspect of the district court's opinion and does not offer an alternative framework by which to assess his deceit claim.

-24-

jaundiced eye, even when the party . . . is sophisticated" was not adequately supported by translated caselaw).[9]

Second, we find that Feliciano has failed to put forth evidence that would allow a reasonable factfinder to conclude that he reasonably relied on Rebarber's alleged misrepresentations.[10] See Portugués-Santana, 657 F.3d at 59 (requiring "the plaintiff's reasonable and foreseeable reliance" on a party's false representation); see also P.R. Elec. Power Auth., 515 F.3d at 67 ("Puerto Rico law places little weight on a sophisticated and experienced business party's assertion of unknowing reliance."). Feliciano faults the district court for ruling that he was a

---

[9] Feliciano does not argue that the concept of sophisticated party should not apply in cases of serious dolo where a party is seeking to avoid the contract.

[10] For purposes of this analysis and because it is non-dispositive, see Celotex Corp., 477 U.S. at 323, we bypass the question of whether a reasonable jury could find that Rebarber falsely represented the condition of the airplanes as excellent and that AA was operating in compliance with FAA rules and assume this to be the case. See Feliciano-Muñoz, 2018 WL 8805486, at *6. However, we rule out that a jury could find that Rebarber misrepresented the number of pilots needed to operate AA. The district court did not address this claim, and Feliciano does not challenge the district court's omission on appeal. Furthermore, we find Feliciano's unsupported, conclusory statement that Rebarber misrepresented the number of pilots needed to operate AA -- contained in Feliciano's self-serving affidavit and seemingly contradicted by his own admission in his opposition to summary judgment -- is insufficient to give rise to a disputed material fact. See Torrech-Hernández v. Gen. Elec. Co., 519 F.3d 41, 48 (1st Cir. 2008).

-25-

sophisticated buyer when "[his] education, social background and economic status was [sic] never put into evidence." Although Feliciano points to gaps in the record about his background, he cannot resist summary judgment by "rest[ing] on mere allegations or denials, but must identify and allege specific facts showing a genuine issue for trial." Torrech-Hernández v. Gen. Elec. Co., 519 F.3d 41, 47–48 (1st Cir. 2008) (citing Colantuoni v. Alfred Calcagni & Sons, Inc., 44 F.3d 1, 6 (1st Cir. 1994)). He has failed to do so. Setting aside the question of whether Feliciano was a sophisticated buyer per se, we find that there is not sufficient evidence in the record to allow a jury to find reasonable reliance.

Feliciano does not dispute that he was an experienced businessman, who had owned airplanes in the past, and that he hired three experts, including an aviation consultant, to advise him on this deal. To the extent that the district court found this to be dispositive as to whether it was reasonable for Feliciano to rely on Rebarber's alleged misrepresentations, we disagree. See Feliciano-Muñoz, 2018 WL 8805486, at *8. Surely, we can think of situations where a party with Feliciano's background, as evidenced in the record, is outsmarted by a conniving fraudster so that reliance might be reasonable. Yet, in his efforts to prove that he was not a sophisticated buyer, Feliciano essentially points out

-26-

the many ways his reliance on the alleged misrepresentations would not have been reasonable under the circumstances. See Wadsworth, Inc. v. Schwarz-Nin, 951 F. Supp. 314, 326 (D.P.R. 1996) ("[T]he unreasonableness of the plaintiff's reliance may be regarded as sufficient evidence that he did not in fact rely upon the claimed false representation."). Puerto Rico law does not allow us to "attribute [to P]laintiff an ingenuousness almost inexistent in the business[] world in which he moved," as Feliciano would have us do. Planned Credit of P.R., Inc. v. Page, 3 P.R. Offic. Trans. 341, 355 (1975).

When we construe the facts in Feliciano's favor, as we must at this stage, his arguments foreclose the possibility that a reasonable factfinder could find in his favor, and he is not entitled to the inferences he seeks based on the evidence in the record. See Pina v. Children's Place, 740 F.3d 785, 796 (1st Cir. 2014) ("[A] nonmovant cannot rely merely upon conclusory allegations, improbable inferences, and unsupported speculation." (internal quotation marks omitted) (quoting Dennis v. Osram Sylvania, Inc., 549 F.3d 851, 855-56 (1st Cir. 2008))). For example, Feliciano posits that because one of his experts advised him to walk away from the deal and he did not, he must have "relied solely on Rebarber's warranties." Appellant's Br. 28 (emphasis added). This is not a reasonable inference. "[B]lind faith

cannot vitiate the[] opportunity to detect the fraud." Kennedy v. Josephthal & Co., 814 F.2d 798, 805 (1st Cir. 1987).

While this may not be relevant to a breach of contract claim, given the SPA's integration clause, the summary judgment record shows that Feliciano was on notice that Rebarber intended the deal to be "as is" and did not allow for a mechanical inspection of the airplanes. This further confirms that the dolo claim fails for want of reasonable reliance.

If, on the one hand, the executed contract was "as is," then a reasonable jury would have to conclude that any reliance by Feliciano was not reasonable.[11] Feliciano insisted in his deposition that he only conducted partial due diligence related to accounting and a long arm, soft appraisal; but he does not offer any evidence as to why a reasonable factfinder could find his reliance, in lieu of conducting due diligence, to be reasonable, given the circumstances and the stakes involved in the transaction. Feliciano also suggests that it would not have made a difference had his experts conducted due diligence because the information provided about the airplanes was "not true or reliable." In the

---

[11] Take by analogy a first-time car buyer, who upon speaking to the current owner, decides to buy a forty-year-old car based solely on the owner's representation that the car is in excellent condition and complies with all current automobile standards, although the owner affirmatively prevents the prospective buyer from giving it a test drive or running the engine.

same breath, he argues that the airplane logbooks were not reliable because they did not show "entries . . . of any discrepancies or maintenance issues, for a long time . . . in order to conceal that the aircrafts [sic] were not in airworthy condition."  Feliciano's conclusion about the unreliability of the logbooks is based entirely on the face of them, and there is no evidence that this information was not available to Feliciano or his experts prior to the execution of the deal.[12]

If, on the other hand, the SPA -- contrary to Rebarber's stated intention -- was not "as is," but contained, instead, an express warranty related to the condition of the assets, then a reasonable jury would here have to conclude that Feliciano did not actually rely on the alleged misrepresentation.  Indeed, in this regard, Feliciano has argued that "[p]recisely" because he questioned Rebarber's alleged representation "that the airplanes were in excellent condition," "the SPA contain[ed] provisions for Plaintiff Feliciano to recover from Defendant Rebarber any expenses for repairs that Defendant Rebarber should have done before the SPA."  Put otherwise, in this scenario, far from actually relying on a misrepresentation, Feliciano took contractual measures to safeguard against its falsity.  Although we leave open the question of whether

---

[12] Nor did Feliciano put in the record the materials provided by Rebarber, which Feliciano claims contained false information.

the deal here was, in fact, "as is," it is clear enough that, under either circumstance, the dolo claim fails.

That there is no probative evidence indicating Feliciano's reasonable reliance does not create a triable issue. In fact, it is precisely because there is no evidence to support Feliciano's claim of reasonable reliance that there is not a question for the jury. McCarthy, 56 F.3d at 315 ("As to issues on which the summary judgment target bears the ultimate burden of proof, she cannot rely on an absence of competent evidence . . . ."). Based on the evidence in the record, we conclude that no reasonable jury could rule in Feliciano's favor as to the reasonable reliance issue.[13]

For the reasons explained above, we affirm the district court's decision to grant Rebarber's motion for summary judgment on the dolo claim.

_____

[13] Nor do the cases Feliciano cites support his position that there was reasonable reliance here. See, e.g., Elias Bros. Rests. v. Acorn Enter., Inc., 831 F. Supp. 920, 926-27 (D. Mass. 1993) (finding that "reli[ance] upon prior oral representations . . . was unreasonable as a matter of law" because the agreement between the parties, which included a valid integration clause, disclaimed all earlier oral promises or representations between the parties so that any reliance on what the court determined was mere "puffing" or "trade talk" was unreasonable (quoting Schott Motorcycle Supply, Inc. v. Am. Honda Motor Co., 976 F.2d 58, 65 (1st Cir. 1992))).

## II. Conclusion

In sum, we hold that the district court erred in concluding that Feliciano did not assert a breach of contract claim and abused its discretion when it evaluated Rebarber's motion for summary judgment with respect to the breach of contract claim as if it were a Rule 12(b)(6) motion to dismiss. We vacate and remand to the district court with instructions to review Feliciano's breach of contract claim, which according to Feliciano was his primary theory of liability, under the summary judgment standard. As for Feliciano's fallback theory of dolo, we affirm the district court's grant of summary judgment. Each party shall bear their own costs.

**Affirmed in part, Vacated and Remanded in part.**