**2024 UT App 173**

### THE UTAH COURT OF APPEALS

NATHAN DALE SMALL,
Appellant,
*v.*
TRISHA DAWN SMALL,
Appellee.

Opinion
No. 20230487-CA
Filed November 29, 2024

First District Court, Brigham City Department
The Honorable Spencer D. Walsh
No. 224100138

Jeremy G. Jones, Attorney for Appellant

Michael E. Christiansen, Attorney for Appellee

JUDGE AMY J. OLIVER authored this Opinion, in which
JUDGES DAVID N. MORTENSEN and RYAN D. TENNEY concurred.

OLIVER, Judge:

¶1      After struggling to resolve issues in their impending divorce via email, Nathan Dale Small (Nathan) and Trisha Dawn Small (Trisha) agreed to meet in person, along with Trisha's brother (Brother).[1] Nathan later believed the parties reached an agreement during the meeting, and he sought to use his declaration and an audio recording of the discussion to prove the existence of the agreement and to enforce it in response to Trisha's petition for divorce. Nathan also sought to question Trisha about the agreement during the hearing on his motion to enforce. Trisha objected to all of Nathan's attempts to introduce evidence regarding the settlement discussions under rule 408 of the Utah

---

1. Because the parties share the same last name, we refer to them by their first names for clarity, with no disrespect intended.

Rules of Evidence. The district court sustained Trisha's objections, concluding that the discussions were compromise negotiations and that neither of the exceptions in rule 408 applied. The district court also concluded that the statute of frauds barred admission of the agreement because the negotiations involved an interest in real property, the marital home. Nathan filed this interlocutory appeal to challenge those rulings. We reverse the district court's rulings because neither rule 408 nor the statute of frauds applies.

BACKGROUND

*Discussions About the Planned Divorce*

¶2    In early 2022, Nathan and Trisha began discussing a resolution of the issues in their planned divorce via email. Trisha asked Brother to contact Nathan to coordinate a time to sit down and attempt to resolve the outstanding issues. In March, Trisha, Nathan, and Brother met at the marital home and discussed the disputed issues in person. Nathan made a surreptitious audio recording of this conversation.

¶3    Trisha and Nathan have markedly different views of the outcome of this meeting. Nathan asserts that they reached an agreement "on the primary issues in dispute" and agreed that Trisha's attorney would draft the final written agreement after the appraisal of the marital home. Trisha asserts that, although they were close to an agreement on many key issues, they did not reach a final agreement.

¶4    After the appraisal of the marital home was complete, Brother reached out to Nathan to request another in-person meeting. Nathan declined to have another meeting because he believed they had a finalized agreement. Trisha filed a petition for divorce shortly thereafter, seeking equitable division of the marital home and any remaining personal property. Nathan subsequently filed an answer asserting four defenses and a

counterclaim that the parties had already reached a settlement agreement regarding property division. Nathan also filed a motion to enforce the oral settlement agreement, which included his declaration and other exhibits. Two days before the hearing on Nathan's motion to enforce, Trisha filed an objection citing rule 408 of the Utah Rules of Evidence and the statute of frauds, but she failed to file an answer to Nathan's counterclaim.

¶5    After the hearing, the domestic relations commissioner found there was no agreement and denied Nathan's motion to enforce. Nathan filed an objection to the commissioner's recommendation under rule 108 of the Utah Rules of Civil Procedure, asserting that he should have been allowed to cross-examine Trisha and present evidence to dispute Trisha's claim that the parties had not reached an agreement.

*The District Court Hearings*

¶6    At the objection hearing before the district court, Nathan subpoenaed Trisha and Brother to dispute Trisha's claim that the parties had not reached an agreement. Nathan first called Trisha to testify. Almost immediately after Trisha was sworn in, her counsel objected to Nathan's questioning on multiple grounds, including the scope of the hearing and the applicability of rule 408. The court continued the hearing to permit briefing on the proper scope of the hearing. After resolving that issue, the court proceeded with the hearing, where Nathan argued that rule 408 did not prohibit the admission of the recording of the parties' initial meeting because it fell under both exceptions to rule 408: the court may admit the evidence "for another purpose" and "the court is not required to exclude [evidence that is] otherwise discoverable." Utah R. Civ. P. 408(b)(1)–(2). He further argued the court should not apply the statute of frauds for the following reasons: (1) Trisha waived the statute of frauds defense because she did not raise it in a responsive pleading to his counterclaim,

(2) Trisha acknowledged the existence of an agreement, and (3) the appraisal was partial performance of the agreement. Further, Nathan argued that he wanted to introduce part of the recording only to impeach Trisha's denials about the existence of an agreement and to "evaluate the portions of the recording that establish that there was a settlement." Trisha argued that the statute of frauds was not waived due to failure to raise it in a responsive pleading and that the exceptions to rule 408 were not met.

¶7 At the end of the hearing, the district court issued a detailed oral ruling that was memorialized into its written ruling issued two months later. The court sustained Trisha's objection under rule 408, determining that the parties' discussion was a settlement negotiation and that evidence of such in the form of the recording and Nathan's declaration were not admissible under rule 408 because neither of the rule's exceptions applied. The court concluded that the first exception—admission for another purpose "such as proving a witness's bias or prejudice," *see id.* R. 408(b)(1)—did not apply because "[t]he purpose [of impeachment] is not to get to prejudice or bias but to get into the purported terms of this agreement." The court concluded that the second exception—admission of "otherwise discoverable evidence," *see id.* R. 408(b)(2)—did not apply because "what is being sought to be introduced is what were the terms and what is the agreement." Finally, the court concluded that the statute of frauds applied as this was an interest in real property, and that the appraisal was not sufficient to demonstrate partial performance to overcome the statute of frauds. However, the court permitted Nathan to make a limited record in the form of a list of the pieces of evidence he wished to submit and a list of the alleged agreement's essential terms.

¶8 Nathan filed an interlocutory appeal, which this court granted.

ISSUES AND STANDARDS OF REVIEW

¶9     Nathan raises three issues on appeal. Nathan first challenges the recommendation of the commissioner. But "rulings made by the commissioner become the order of the district court until modified by that court." *Day v. Barnes*, 2018 UT App 143, ¶ 18, 427 P.3d 1272. Because the district court made its own "independent findings of fact and conclusions of law," we decline to review the recommendation of the commissioner. *Id*. ¶ 16 (cleaned up).

¶10     Nathan next contends that the district court incorrectly applied rule 408 when it excluded his declaration and audio recording as inadmissible compromise negotiations that were not subject to either of rule 408's exceptions. "We review the [district] court's resolution of the legal questions underlying the admissibility of evidence for correctness," and we review the district court's decision whether "to admit or exclude evidence for an abuse of discretion." *Beckman v. Cybertary Franchising, LLC*, 2018 UT App 47, ¶ 22, 424 P.3d 1016.

¶11     Finally, Nathan contends that the district court erroneously applied the statute of frauds to the oral agreement after it had been waived. "The applicability of the statute of frauds is a question of law to be reviewed for correctness." *Thompson v. Capener*, 2019 UT App 119, ¶ 7, 446 P.3d 603 (cleaned up).

ANALYSIS

I. Applicability of Rule 408

¶12     Nathan contends the district court erroneously excluded his declaration and the audio recording of the settlement negotiations and alleged agreement for dissolution of the marriage for two reasons. First, Nathan intended to use the declaration and audio recording for impeachment, which he

asserts is a proper "other purpose" under the first exception to rule 408. Second, he asserts the information in the declaration and audio recording was "otherwise discoverable" under rule 408's second exception because Brother, a non-privileged third party, was present during the settlement negotiations. But because we hold that rule 408 does not apply here, we need not address the application of either exception.

¶13    Rule 408 of the Utah Rules of Evidence states that evidence of "furnishing, promising, or offering—or accepting, promising to accept, or offering to accept—a valuable consideration in order to compromise or attempt to compromise the claim," or evidence of "conduct or a statement made in compromise negotiations," is not admissible "to prove or disprove *liability for or the validity or amount of a disputed claim*." Utah R. Evid. 408(a) (emphasis added). Because Utah's rule 408 as originally written was identical to the then-existing federal rule involving compromise offers and negotiations, we look to the federal rule and caselaw for guidance on the scope of rule 408's prohibition.[2] *See* Utah R. Evid. 408 original advisory committee's note ("This rule is the federal rule, verbatim . . . ."); *Robinson v. Taylor*, 2015 UT 69, ¶ 10, 356 P.3d 1230 (stating that, as Utah courts, "[w]e may also rely on interpretations of similar federal rules by federal courts to assist our own interpretation").

---

2. We acknowledge that Utah's rule 408 is not currently identical to rule 408 of the Federal Rules of Evidence. *Compare* Utah R. Evid. 408, *with* Fed. R. Evid. 408. As our supreme court noted in *In re Estate of Osguthorpe*, 2021 UT 23, 491 P.3d 894, the federal rule now "expressly prohibits the use of a statement made during compromise negotiations if the purpose is to impeach," while Utah's rule 408 does not contain the same prohibition. *Id.* ¶ 143 n.40 (cleaned up). But this difference is not relevant to the question before us of whether rule 408 applies to the evidence Nathan seeks to introduce.

¶14 Under Federal Rule of Evidence 408, "the admissibility of compromise [or settlement] evidence depend[s] on the purpose for which" the evidence is offered. 23 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 5314 (2d ed. June 2024 update) (footnote omitted). Federal courts have construed rule 408 narrowly. *Id.; see also Dahlgren v. First Nat'l Bank of Holdredge*, 533 F.3d 681, 699 (8th Cir. 2008) (discussing Eighth Circuit caselaw and concluding that the circuit has "viewed the scope of [r]ule 408 narrowly"); *Rosas v. GEICO Cas. Co.*, No. 2:18-cv-01200, 2022 WL 2440866, at *2 (D. Nev. Jan. 26, 2022) (stating that the scope of rule 408 is relatively narrow); *Peek v. Nationstar Mortgage, LLC*, No. 17-cv-230, 2017 WL 7039179, at *1 (D.N.H. Sept. 22, 2017) (same); *Clark v. Experian Info. Sols., Inc.*, No. 03 C 7882, 2006 WL 626820, at *2 (N.D. Ill. Jan. 6, 2006) (same).

¶15 One use of compromise or settlement evidence that is not prohibited by federal rule 408 is "where the compromise agreement is the basis for the claim rather than circumstantial evidence of the validity of the claim being compromised." 23 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 5314 (2d ed. June 2024 update). This includes the use of settlement or compromise evidence to prove the existence of a settlement agreement or to show breach of a settlement agreement. *See Cates v. Morgan Portable Bldg. Corp.*, 780 F.2d 683, 691 (7th Cir. 1985) ("Obviously a settlement agreement is admissible to prove the parties' undertakings in the agreement, should it be argued that a party broke the agreement."); *Global Fleet Sales, LLC v. Delunas*, 203 F. Supp. 3d 789, 819 (E.D. Mich. 2016) (recognizing that "settlement negotiations can be admissible for other purposes, including proving the existence of an agreement"); *Palmer v. Wal-Mart Stores East, LP*, No. 1:19-cv-0372, 2021 WL 1297835, at *2 (W.D. Pa. Apr. 7, 2021) ("Offering evidence to prove the existence of an agreement to settle a claim (or a portion of a claim) is a purpose other than to establish liability on a disputed claim and, therefore, outside of [r]ule 408's proscription of admissibility.").

¶16 Moreover, allowing evidence from settlement or compromise negotiations to show the existence or breach of an agreement does not "contravene the public policy favoring compromise." *Catullo v. Metzner*, 834 F.2d 1075, 1079 (1st Cir. 1987). Rather, it is essential to allow such evidence to be admitted to ensure "judicious enforcement of [such] agreement[s]." *Id.*

¶17 Here, "the negotiations leading up to settlement were not offered to prove or undermine the validity of [Nathan's] underlying . . . claims against [Trisha]" or vice versa. *Glen Elec. Holdings GmbH v. Coolant Chillers, Inc.*, No. 1:10-cv-1109, 2013 WL 2407613, at *6 (W.D. Mich. May 31, 2013). Nathan offered his declaration and the recording as evidence "to prove the existence and terms of the settlement agreement itself." *Id.* Therefore, we hold that Utah's rule 408—just like federal rule 408—"plainly does not apply" to this situation. *Id.* Were we to hold that rule 408 mandates exclusion of all communications made during a settlement negotiation—as Trisha advocates here—it is difficult to imagine how a party could ever seek to prove the existence and terms of an oral settlement agreement.

¶18 Turning to the specific evidence that Nathan seeks to introduce, we have reviewed the declaration and conclude that certain testimony is not prohibited by rule 408 because it goes to the existence of an agreement and its terms rather than to "prove or disprove liability for or the validity or amount of a disputed claim."[3] Utah R. Evid. 408(a). Paragraphs 1, 2, 3, 7, and 9 of

---

3. In addition to the declaration, the audio recording of the conversation between Nathan and Trisha can also be used to prove the existence and terms of an agreement without running afoul of rule 408. But because we were not provided with the audio recording and did not have the opportunity to review its contents, we hold that the recording can only be used to the extent it supports the specifically identified statements from the declaration.

Nathan's declaration do not run afoul of rule 408 and are admissible in full. The following selections of the remaining paragraphs are also admissible to demonstrate the existence and terms of the agreement:

> 4. On March 29, 2022, the three of us met in the kitchen of the marital home. [Trisha] and I parsed out the primary issues in dispute. Trisha and I were able to reach an agreement on the following terms:
>
> > a. I agreed to offset $60,998.41 from my equal share of the equity in the marital home. . . .
> >
> > b. . . . Trisha agreed to waive claim against my Tier I public safety pension and I agreed not to seek award from Trisha's TIAA Retirement account with Weber State University.
> >
> > c. We agreed to offset our respective 401k, IRA and other retirement accounts . . . .
> >
> > d. We agreed what to do with our dog, Ivan, who was primarily my pet. Trisha agreed to care for the dog in the marital home until I could find separate accommodation, subject to me paying for Ivan's food and other expenses.
> >
> > e. I agreed to vacate the marital home and cede possession to Trisha as soon as the settlement was reduced to writing.
> >
> > f. We further agreed to take our own personal property, bank accounts, and other assets. We agreed to resolve any other property division between ourselves.

g. We agreed to take our own vehicles, I agreed to take Trisha's vehicle debt, and we each agreed to take our own credit card debt.

h. Trisha agreed not to seek alimony.

i. Trisha specifically promised that she would not file an action against me . . . .

j. Trisha agreed to allow me to keep her suppressor. I agreed to let Trisha keep her firearms.

k. We . . . agreed that the number from the appraisal would be used to set the value of the home so we could divide the equity per our agreement.

5. . . . [W]e would allow [Trisha's] attorney to draft up the agreement at the meeting Trisha had scheduled on April 18, 2022 . . . .

. . . .

8. On April 14, 2022, I received a call from [Brother] . . . . Trisha wanted to meet again to try to renegotiate the terms. I sent Trisha a letter indicating I planned on adhering to the agreement.

The omitted portions of the declaration are not admissible under rule 408 because they address the underlying disputed claims rather than the existence and terms of the settlement agreement.

¶19  In sum, rule 408 does not prohibit Nathan from introducing evidence to establish the existence and terms of the settlement agreement, and Nathan may use the specifically

identified sections of his declaration and the supporting parts of the audio recording to do so.

## II. Statute of Frauds

¶20     Nathan argues that the district court erred by excluding his declaration and audio recording under the statute of frauds because Trisha did not affirmatively raise the statute of frauds defense at the pleading stage and therefore the defense was waived. While we agree with Nathan that the statute of frauds defense can be waived if a party fails to raise it in a responsive pleading, *see* Utah R. Civ. P. 8(c), we need not address that issue here as we determine that the statute of frauds does not apply.

¶21     Utah's statute of frauds generally bars "enforcement of certain [types of] agreements that the law requires to be memorialized in writing." *Coleman v. Stuart*, 2019 UT App 165, ¶ 29, 451 P.3d 658 (cleaned up); *see also* Utah Code § 25-5-1. Estates and interests in real property are types of agreements that fall under the statute of frauds and "shall [not] be created, granted, assigned, surrendered or declared otherwise than by . . . deed or conveyance in writing." Utah Code § 25-5-1. "Any contract *conveying an interest in land* in which the agreement has not been reduced to writing and signed by the person relinquishing the property is unenforceable." *Coleman*, 2019 UT App 165, ¶ 29 (emphasis added) (cleaned up).

¶22     However, the statute of frauds is not implicated by "all agreements that merely touch on real estate in some collateral way." *Mattfeld v. Griffee*, No. 2:16-cv-01278, 2017 WL 1956986, at *2 (D. Utah May 10, 2017) (concluding that the alleged agreement did not fall within the statute of frauds because the defendants did not allege that any transfers of real property were made in the oral instrument); *see Bennett v. Huish*, 2007 UT App 19, ¶¶ 25–26, 155 P.3d 917 (ruling that an oral agreement involving loan proceeds from a loan secured by real property was not a "transfer of an interest in real property," so the statute of frauds did not

apply); *Warburton v. Virginia Beach Fed. Sav. & Loan Ass'n*, 899 P.2d 779, 781–83 (Utah Ct. App. 1995) (concluding that lot reservation agreements that reserved a building lot and a membership at country club were "not an interest in real property"); *Mackintosh v. Hampshire*, 832 P.2d 1298, 1301–02 (Utah Ct. App. 1992) (holding the statute of frauds did not apply where the "amended complaint specifically claim[ed] a share of the monetary profits," not "any interest in real property").

¶23 Nathan's declaration does not mention a creation, transfer, grant, assignment, surrender, or declaration of real property. The closest the declaration gets to mentioning a conveyance of real property is Nathan's statements that he "agreed to offset $60,998.41 from [his] equal share of the equity in the marital home" and that he agreed to "cede possession to Trisha." But neither of these statements show a conveyance of real property that triggers the statute of frauds because offsetting equity in a home and moving out is not the same as transferring, granting, assigning, surrendering, or otherwise conveying a property interest to Trisha. Therefore, the statute of frauds does not apply to the claimed agreement between Trisha and Nathan, and regardless of whether Trisha waived the argument, Nathan is not required to meet the statute of frauds requirements to prove the existence and terms of the agreement.

CONCLUSION

¶24 We reverse the district court's determination that rule 408 requires exclusion of all evidence regarding the settlement negotiations. The aforementioned parts of Nathan's declaration and supporting parts of the audio recording are admissible to prove the existence and terms of the oral agreement. We also conclude that the district court erred in determining that the statute of frauds applied here, and Nathan is therefore not precluded from attempting to prove the existence of the oral agreement.

———————